UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MONICA P.,

                      Plaintiff,

                                                  5:25-CV-70
   v.                                            (DJS)

FRANK BISIGNANO, *Commissioner*
*of Social Security*,

                      Defendant.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

OLINSKY LAW GROUP                  HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      KRISTINA D. COHN, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

### MEMORANDUM DECISION AND ORDER[1]

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full

1

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 11, 13, & 14.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1982.  Dkt. No. 6, Admin. Tr. ("Tr.") at p. 313.  She has at least a high school education.  Tr. at p. 341.  She has not worked since December 1, 2021.  Tr. at p. 340.  She has past work experience as a hair cutter and a home health aide.  Tr. at p. 341.  Plaintiff alleges disability based on severe depression manic, arthritis, fibromyalgia, irritable bowel syndrome, Raynaud's disease, long COVID, high blood pressure, and cholesterol.  Tr. at p. 340.

### B. Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits on January 18, 2022.  Tr. at p. 66.  She alleged a disability onset date of December 1, 2021.  *Id.*  Plaintiff's applications were initially denied on July 20, 2022.  Tr. at pp. 146-165. Reconsideration was denied on November 18, 2022, Tr. at pp. 168-193, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 196-97.  Plaintiff appeared at a hearing before ALJ Bruce S. Fein on

---

jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 4 & General Order 18.

April 16, 2024, at which Plaintiff and a vocational expert ("VE") testified. Tr. at pp. 34-60. On April 24, 2024, the ALJ issued a written decision finding Plaintiff was not disabled. Tr. at pp. 15-28. On December 10, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2026. Tr. at p. 17. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2021, the alleged onset date. *Id.* Third, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, right rotator cuff tear, obesity, post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. Tr. at p. 18. Fourth, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Tr. at p. 19. Fifth, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work except that she:

> can occasionally climb ramps or stairs, never climb ropes, ladders or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch or crawl. [Plaintiff] can frequently reach with the right upper extremity. She should avoid concentrated exposure to extreme cold and pulmonary irritants such as fumes, odors, gases, dust, poorly ventilated areas.

3

> [Plaintiff] is limited to work in a low stress job defined as only occasional decision making, changes in the work setting and judgment required on the job.

Tr. at p. 21. Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at p. 26. Next, the ALJ found that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." *Id.* The ALJ then determined that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 26-27. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 27.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of

4

the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff raises three claims of error for review in this proceeding. First, Plaintiff argues that the ALJ improperly evaluated the opinion of treating source Digant Nanavati, M.D. ("Dr. Nanavati"), because the ALJ "failed to adequately explain his consideration of the factors of supportability and consistency in his rationale for finding the physical restrictions which Dr. Nanavati assessed to be unpersuasive." Dkt. No. 11, Pl.'s Mem. of Law at pp. 6-11. Second, Plaintiff asserts that "[t]he RFC failed to account for moderate mental limitations adopted at step three in the sequential evaluation process, and the ALJ offered no explan[a]tion for the discrepancy." *Id.* at pp. 12-14. Third, Plaintiff claims that, "[e]ven if the RFC were found to be adequate, the jobs cited by the ALJ in this case do not exist in significant numbers." *Id.* at pp. 14-19. Defendant responds that the ALJ's decision is supported by substantial evidence and should be affirmed. Dkt. No. 13, Def.'s Mem. of Law at pp. 4-16.

### A. Mental Limitations

Plaintiff argues that the ALJ failed to explain a discrepancy between his finding of limitations at Step Three and the mental restrictions included in the RFC at Step Four, which Plaintiff claims fail to properly account for these limitations. Pl.'s Mem. of Law at pp. 12-14. Plaintiff's claims of error are not a basis for remand.

Here, a review of the ALJ's decision reveals that, at Step Three, the ALJ found that Plaintiff has "moderate limitations" in her "ability to concentrate, persist, or maintain pace." Tr. at p. 20. The ALJ further noted that, while Plaintiff "contended that

7

she has limitations in concentrating generally and focusing generally," she also "said that she is able to drive, prepare meals, and manage funds." *Id.* Thereafter, at Step Four, in considering Plaintiff's RFC, the ALJ determined that Plaintiff "is limited to work in a low stress job defined as only occasional decision making, changes in the work setting, and judgment required on the job." Tr. at p. 21.

Despite Plaintiff's arguments to the contrary, there is no discrepancy between the ALJ's finding of moderate limitations at Step Three and the mental restrictions set by the ALJ at Step Four because determinations at Step Three and Step Four "require distinct analysis." *Richard B. v. Comm'r of Soc. Sec.*, 2021 WL 4316908, at *6 (W.D.N.Y. Sept. 23, 2021) (citation omitted). While the analysis at Step Three "concerns the *functional effects* of mental impairments, the RFC analysis at [S]tep [F]our specifically considers *work-related* physical and mental activities in a *work setting*." *Id.* (quotation omitted) (emphasis in original). "As a result, a finding at [S]tep[] . . . [T]hree does not automatically translate to an identical finding at [S]tep [F]our," and thus a Step Three finding of a moderate limitation does not control at the Step Four RFC determination. *Id.* (quotation omitted).

For example, in *Pidgeon v. Comm'r of Soc. Sec.*, the plaintiff argued "that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination," but the court found that this argument "lack[ed] merit because the ALJ's findings at [S]tep 3 of the sequential analysis are not an RFC determination" and it is not "necessarily error for an

8

ALJ not to include findings made at Step 3 in the RFC." 2017 WL 4680412 (W.D.N.Y. Oct. 18, 2017).

In any event, Plaintiff's argument fails for two additional reasons. First, Plaintiff assumes—without explanation—that adoption of a moderate restriction in concentration, persistence, and pace would have impacted the outcome of the ALJ's decision, Pl.'s Mem. of Law at p. 14, but "moderate mental limitations do not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work." *Crumedy v. Comm'r of Soc. Sec.*, 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (citations omitted).

Additionally, the ALJ's mental RFC finding is supported by substantial evidence. Dennis Noia, Ph.D., observed that Plaintiff's memory, attention, and concentration were intact, Tr. at pp. 24 & 477, and concluded that Plaintiff had no limitations sustaining concentration and performing a task at a consistent pace. Tr. at pp. 25 & 478. C. Walker, Ph.D., and Y. Sherer, Psy.D., also found that Plaintiff's memory, attention, and concentration were intact and concluded that Plaintiff's mental health impairments were non-severe. Tr. at pp. 25, 75, 91, 110-11, & 128-29. Dr. Nanavati observed that Plaintiff was alert, oriented, and had a normal mood. Tr. at pp. 468 & 472. Other records indicate that Plaintiff's judgment, insight, and memory were normal. Tr. at pp. 24, 424, 428, 712, 716, 718, 721, & 737. While Plaintiff "contended that she has limitations in concentrating generally and focusing generally," Tr. at p. 20, Plaintiff, at times, reported that she could concentrate fully with only "slight difficulty." Tr. at pp. 804 & 846.

Accordingly, Plaintiff has not pointed to any error in the ALJ's analysis at Steps Three and Four warranting remand.

### B. Opinion of Digant Nanavati, M.D.

Plaintiff also argues that the ALJ improperly evaluated the opinion of Dr. Nanavati. Pl.'s Mem. of Law at pp. 6-11. Plaintiff further asserts that, as a result, the RFC determination in this case lacks substantial evidentiary support. *Id.* at p. 7. The Court disagrees.

The ALJ recounted Dr. Nanavati's statements that Plaintiff: in an eight-hour workday, could stand or walk less than two hours and can sit about two hours; could never lift and carry less than ten pounds; can rarely twist or climb; could never stoop or squat; and would be absent from work more than four days each month and off task more than twenty percent of the time. Tr. at p. 25; *but see also* Tr. at p. 875 (medical source statement prepared by Dr. Nanavati stating that Plaintiff could "never" and "rarely" lift and carry less than ten pounds in a competitive work situation, meaning that Plaintiff could lift and carry less than ten pounds between one percent to thirty-three percent of an eight-hour workday). Initially, the ALJ recognized that, as Plaintiff's healthcare provider, Dr. Nanavati is "in a unique position to understand [Plaintiff's] impairments and resultant limitations." Tr. at pp. 25-26. Nevertheless, the ALJ found Dr. Nanavati's opinion not persuasive because, according to the ALJ, it was not supported by objective evidence and was not consistent with the other opinions of record. *Id.* The ALJ further explained that Dr. Nanavati's "own reports fail to reveal

the type of significant clinical and laboratory abnormalities one would expect with the noted level of impairment." Tr. at p. 26.

On review, the Court notes that, "under the Social Security Administration's latest regulations, which apply because [Plaintiff] filed her claim for benefits after March 27, 2017, no special deference is given to the opinion of the treating physician." *Tibbles v. Comm'r of Soc. Sec.*, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (citation omitted). Instead, ALJs are "to consider the submitted medical opinions based on several factors set forth in the regulations and to explain how the two most important factors – supportability and consistency – applied to each opinion." *Rushford v. Kijakazi*, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (quotations omitted).

Here, the ALJ's rationale in finding Dr. Nanavati's opinion not supported by objective evidence and not consistent with other opinions of record is sufficiently explained earlier in the decision during the ALJ's discussion of other records and opinions. *Nicole A.W. o/b/o K.A.H. v. Comm'r of Soc. Sec.*, 2024 WL 5400278, at *7-8 (N.D.N.Y. Nov. 19, 2024), *report and recommendation adopted sub nom. Nicole W. on behalf of K.A.H. v. Comm'r of Soc. Sec.*, 2025 WL 368791 (N.D.N.Y. Feb. 3, 2025) (citing cases).

First, with regard to Plaintiff's ability to stand, walk, and sit, the ALJ stated in his decision that, during a December 2022 orthopedic appointment, a physical examination of Plaintiff "showed that she transitioned from sitting to standing, and walked with a non-antalgic gait." Tr. at pp. 23, 585, & 660; *see also* Tr. at pp. 592 &

11

663 (same as to Plaintiff's November 2022 orthopedic appointment); Tr. at pp. 669 (same as to Plaintiff's June 2022 medical records). The ALJ also noted that T. Schmidt-Deyoung, M.D. ("Dr. Schmidt-Deyoung"), opined that Plaintiff could stand and walk up to four hours, Tr. at pp. 24-25, and Elke Lorensen, M.D. ("Dr. Lorensen"), opined that "there were no gross limitations for sitting, standing, walking, and using the hands." Tr. at pp. 25 & 484. The ALJ further discussed Dr. Lorensen's findings during her physical examination of Plaintiff in July 2022, which "showed a normal gait without the use of an assistive device," and revealed that Plaintiff's "strength was 5/5 in the upper and lower extremities" and "[h]er straight leg raise testing was negative bilaterally." Tr. at p. 23.

In any event, the RFC properly accounts for any limitations in Plaintiff's ability to stand and walk. Tr. at p. 21. Dr. Nanavati opined that, in an eight-hour workday, Plaintiff could stand or walk less than two hours. Tr. at p. 25. The RFC restricts Plaintiff to sedentary work. Tr. at p. 21. "Jobs are sedentary if walking and standing are required occasionally," 20 C.F.R. § 404.1567(a), which means that walking and standing occur "from very little up to one-third of the time," and would "generally total no more than about 2 hours of an 8-hour workday." SSR 83-10. As such, the restrictions that the ALJ set in determining Plaintiff's RFC incorporate the limitations in standing and walking cited by Dr. Nanavati. Tr. at pp. 21 & 25.

Second, with regard to Plaintiff's ability to lift, Dr. Nanavati's medical source statement opines that Plaintiff could "never" and "rarely" lift and carry less than ten

12

pounds in a competitive work situation, which, according to the instructions contained in the medical source statement, means that Plaintiff could lift and carry less than ten pounds between one percent to thirty-three percent of an eight-hour workday. Tr. at p. 875. This finding is contradicted by Dr. Lorensen's conclusion that Plaintiff had moderate limitations for lifting, which the ALJ noted in his opinion. Tr. at p. 25. By comparison, "[m]edium, or moderate, work activity involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Martell v. Apfel*, 2000 WL 567012, at *6 (S.D.N.Y. May 9, 2000) (quoting 20 C.F.R. § 416.967(c)). The RFC's restriction to sedentary work thereby accounts for any limitations in Plaintiff's ability to lift because sedentary work is defined "as involving lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." SSR 83-10.

In addition, the aforementioned restrictions contained in the RFC are also supported by the findings of M. Perrotti, M.D. ("Dr. Perrotti") and Dr. Schmidt-Deyoung, which the ALJ found somewhat persuasive. Tr. at p. 25. Dr. Perrotti opined that Plaintiff could stand and/or walk about six hours in an eight-hour workday and could sit more than six hours in an eight-hour workday. Tr. at pp. 77-78. Dr. Perrotti also opined that Plaintiff could occasionally lift and/or carry fifty pounds and could frequently lift and/or carry twenty-five pounds. *Id.* Dr. Schmidt-Deyoung opined that Plaintiff could stand/or walk about four hours in an eight-hour workday and could sit more than six hours in an eight-hour workday. Tr. at pp. 113 & 131. Dr. Schmidt-

Deyoung also opined that Plaintiff could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds. *Id.*

Third, as for Plaintiff's postural limitations, including twisting, climbing, stooping, and squatting, the ALJ determined that Plaintiff had the RFC to occasionally do such activities, but could never climb ropes, ladders, or scaffolds. Tr. at p. 21. This is consistent with the findings of Dr. Perrotti and Dr. Schmidt-Deyoung discussed by the ALJ in his opinion. Tr. at pp. 24-25. More specifically, the ALJ noted that Dr. Perrotti had opined that Plaintiff "is able to . . . climb[] ramps and stairs . . . occasionally" and that Plaintiff "should never climb ladders, ropes, and scaffolds. Tr. at p. 24. Similarly, the ALJ noted that Dr. Schmidt-Deyoung had concluded that Plaintiff would be able to perform postural activities occasionally. Tr. at pp. 24-25. In addition, this portion of the RFC is supported by the ALJ's discussion of Dr. Lorensen's physical examination of Plaintiff, during which Dr. Lorensen observed that Plaintiff's squat was "40% of full." Tr. at pp. 23 & 482.

Fourth, with regard to Plaintiff's absence from work and time off task, as previously explained, the ALJ's mental RFC finding is supported by substantial evidence. *See supra* at p. 9.

Finally, while Plaintiff takes issue with the fact that the ALJ stated that Dr. Nanavati's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect with the noted level of impairment," Tr. at p. 26, as Defendant correctly points out, "Dr. Nanavati's extreme limitations were unsupported

by his own findings, which showed that Plaintiff had only moderate tenderness in the cervical spine but normal neurological findings and intact gait along with no signs of acute distress." Def.'s Mem. of Law at p. 9 (citing Tr. at pp. 598, 602, 618-19, 637, 644, 648, & 655).

Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Nanavati's opinion was not supported by objective evidence and was not consistent with other opinions of record, as well as the ALJ's RFC determination.

### C. Numerosity of Jobs

Finally, Plaintiff argues that, even assuming, *arguendo*, that the RFC was adequate, the jobs cited by the ALJ do not exist in significant numbers. Pl.'s Mem. of Law at pp. 14-19. This argument is without merit.

Here, at Step Five of the sequential analysis, the ALJ relied on the testimony of the VE in determining whether jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 26-27. Upon the ALJ's inquiry, the VE affirmed that: he is familiar with jobs that exist in the national economy; his testimony would be based on his knowledge, education, training, and experience; and his testimony would be consistent with the Dictionary of Occupational Titles, unless he stated otherwise. Tr. at pp. 54-55. In considering Plaintiff's residual functional capacity, the VE testified that Plaintiff could perform the sedentary jobs of electronics inspector, optical goods polisher, and print machine tender. Tr. at pp. 27 & 56-57. The VE further stated that there are 16,000 electronics inspector jobs, 14,000 optical goods polisher jobs, and

15

11,000 print machine tender jobs in the national economy. *Id.* Based on this information, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.*

Plaintiff argues, however, that "the number of jobs offered by the [VE] are outdated and inaccurate." Pl.'s Mem. of Law at p. 15. In support of this argument, Plaintiff claims that, according to SkillTRAN's *Job Browser Pro*, at the time of the hearing in 2024, there were only 1,220 electronics inspector jobs, 1,018 optical goods polisher jobs, and 198 print machine tender jobs, for a total of only 2,436 jobs. *Id.* at pp. 15-16. Plaintiff claims that this total "falls well below the standard that has been recognized in practice in this jurisdiction to be a significant number of jobs." *Id.* at 19.

The argument that the Dictionary of Occupational Titles ("DOT") is outdated and unreliable has been consistently rejected by courts in this Circuit. *See Angela Lynn H. v. Comm'r of Soc. Sec.*, 2025 WL 1369400, at *7 (S.D.N.Y. May 9, 2025) (citing cases); *Spencer D.B. v. Comm'r of Soc. Sec.*, 2024 WL 4665803, at *9 (S.D.N.Y. Nov. 4, 2024) (citing cases). "20 C.F.R. §§ 404.1566(d), 416.966(d) take administrative notice that the DOT is a reliable source of information on jobs existing in the national economy." *Parry v. Comm'r of Soc. Sec. Admin.*, 2021 WL 7711082, at *6 (S.D.N.Y. Dec. 1, 2021), *report and recommendation adopted*, 2022 WL 922732 (S.D.N.Y. Mar. 29, 2022).

Additionally, courts have found that "the ALJ is entitled to give credit to the [VE's] testimony." *Oliveras v. Comm'r of Soc. Sec. Admin.*, 2025 WL 563910, at *11 (E.D.N.Y. Feb. 20, 2025). This is so even where the VE's numbers conflict with

16

counsel's job data research, *Pamela M. H. v. Comm'r of Soc. Sec.*, 2024 WL 1468906, at *8 (N.D.N.Y. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1131043 (N.D.N.Y. Mar. 15, 2024); *Poole v. Saul*, 462 F. Supp. 3d 137, 165 (D. Conn. 2020), and particularly where, as here, "Plaintiff . . . failed to challenge the vocational expert's numbers at the hearing." *Glessing v. Comm'r of Soc. Sec.*, 2021 WL 1390640, at *12 (E.D.N.Y. Apr. 13, 2021), *aff'd*, 2022 WL 457243 (2d Cir. Feb. 15, 2022) (citation omitted). "[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)); *see also Pamela M. H. v. Comm'r of Soc. Sec.*, 2024 WL 1468906, at *6 (citations and quotations omitted) (explaining that "the ALJ need not inquire into the vocational expert's precise methodology" and that the "VE was not required to identify with specificity the figures or sources supporting his conclusion"). As such, here, the ALJ reasonably credited the VE's testimony, "which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence on the record." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); *see Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658, at *15 (W.D.N.Y. Mar. 14, 2022).

Accordingly, the ALJ's determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Tr. at pp. 26-27, is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: February 10, 2026
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge